IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA
ERIE DIVISION

| | |
|---|---|
| JAKWARIS ROBISON, | ) |
| | ) |
| Plaintiff | ) 1:20-CV-00242-RAL |
| | ) |
| vs. | ) |
| | ) RICHARD A. LANZILLO |
| | ) UNITED STATES MAGISTRATE JUDGE |
| OFFICER S. VOLS, OFFICER T. | ) |
| TREJCHEL, MICHAEL HOLMAN, | ) MEMORANDUM OPINION ON |
| DEPUTY WARDEN; LT. MICHAEL | ) DEFENDANTS' MOTION TO DISMISS |
| BEGENICS, KEVIN SUTTER, WARDEN, | ) |
| | ) |
| | ) ECF NO. 21 |
| Defendants | ) |

This case comes before the Court on the Defendants' Motion to Dismiss (ECF No. 21) Plaintiff's Complaint pursuant to Fed. R. Civ. P. 12(b)(6). For the reasons discussed herein, Defendants' motion will be GRANTED.

**I.   Background and Procedural Posture**

Plaintiff Jakwaris Robison ("Robison") commenced this civil rights action pursuant to 42 U.S.C. § 1983 against five employees of the Erie County Prison ("ECP"): Corrections Officer Shawn Vols ("Vols"), Corrections Officer Todd Trejchel ("Trejchel"), Lieutenant Michael Beganics ("Beganics"), Deputy Warden Michael Holman ("Holman"), and Warden Kevin Sutter ("Sutter").[1]   Robison claims that the Defendants violated his rights under the First, Sixth, and

---

[1] Robison's Complaint also mentions John E. Wetzel ("Wetzel"), the former Director of the Pennsylvania Department of Corrections ("DOC"), as a defendant. *See* ECF No. 9, ¶ 4. But Robison did not list Wetzel in the caption of his pleading. *See id.*, pp. 1-2. The docket also includes no indication that Robison has effectively served Wetzel with the Complaint. Further, the Complaint includes no allegations to support an inference that Wetzel had any personal involvement in actionable conduct. *See Evancho v. Fischer*, 423 F.3d 347, 353 (3d Cir. 2006); *Kirk v. Roan*, 2006 WL 2645154, at *3 (M.D. Pa. Sept. 14, 2006). Finally, the Court also takes judicial notice of the fact that the ECP is not a correctional institution under the control or jurisdiction of the DOC. For all these reasons, any claim Robison may purport to assert against Wetzel will be dismissed as frivolous and for lack of service.

Fourteenth Amendments to the United States Constitution. *See* ECF No. 9. The Defendants have moved to dismiss Robison's Complaint pursuant to Fed. R. Civ. P. 12(b)(6). *See* ECF No. 21. The motion has been fully briefed and is ripe for disposition. *See* ECF Nos. 22, 29. All parties have consented to the jurisdiction of a United States Magistrate Judge under 28 U.S.C. § 636(c)(1) (ECF Nos. 2, 20).

**II.    Material Facts**

Robison's Complaint alleges the following facts, which the Court accepts as true for purposes of Defendants' motion. On two occasions while Robison was incarcerated at the ECP, certain of his legal papers were displaced or came up missing. *See* ECF No. 9, ¶¶ IV, VI. On May 13, 2020, Correctional Officers Vols and Trejchel searched Robison's cell under the supervision of Baganics. *See* ECF No. 9, p. 3. Robison and his cellmate were removed from the cell during the search. Upon their return, Robison discovered that his legal paperwork had been displaced and some papers were missing. *See id.*, ¶ 11. Robison specifically noticed that an envelope containing copies of preliminary hearing transcripts from his criminal case, which Robison had received from his former lawyer, had been "dumped out an [sic] appeared rummaged through." *Id.* Robison then discovered that "a couple" of the transcript pages were missing. *See id.* When he asked about the missing paperwork, Robison was told that he would need to write to the supervisor and the officers who conducted the search. *See id.* On May 14, 2020 Robison used the ECP's kiosk system to report his missing papers to Baganics. *See id.*, ¶ 13.

On May 18, 2020, Baganics met with Robison about the missing transcript pages. Baganics surmised that the pages were likely thrown away and said he would investigate getting copies of the pages from the portal. *See id.* Robison showed Baganics the remaining pages of

the transcript to give Baganics an idea of what he should look for on the portal; Baganics recorded the pages on his body camera. *See id.* Pursuant to Baganics' request, Robison sent a message through the kiosk system providing the docket number and the page numbers of the pages that were missing. *See id.*

On July 7, 2020, when Robison was transported to the Restricted Housing Unit ("RHU"), he was provided with an inventory list of his personal property from his cell. *See id.*, ¶ 15. However, the inventory did not include his legal paperwork. *See id.* The corrections officer[2] who delivered the inventory told Robison that the legal paperwork was not included on the inventory because Robison was going to receive it after he signed the inventory sheet. *See id.*, ¶ 16. After the paperwork was delivered to Robison, he again found that certain materials were missing. *See id.* In his prison grievance filed on July 20, 2020, Robison stated that "3 envelopes … are missing letters from my former attorney, I had a paper filed with caselaws [sic] that I am missing as well as a copy of my AFFIDAVIT of Probable Cause and more pages of my transcripts." ECF No. 9-5. Robison immediately used the intercom to inform the staff and reported the lost paperwork by way of communication through the kiosk. *See* ECF No. 9, ¶ 16. To date, none of the missing legal papers from the May or July incidents has been retrieved and/or returned to Robison.

Defendants Holman and Sutter are not alleged to have participated in the incidents that resulted in Robison's missing legal papers. Instead, Robison alleges that Holman, the Deputy Warden of ECP, responded to some of his kiosk messages[3] and that Sutter, as ECP Warden, is "responsible for [Vols, Trejchel, and Beganics]" and "is also the one that is responsible for

---

[2] Robison does not identify the correctional officer who confiscated his papers on July 7, 2020.

[3] Robison does not specify the contents of the messages he sent through the ECP kiosks.

everyone's wellbeing throughout the whole prison as well." ECF No. 9, p. 3-4. Holman and Sutter also served as the officials who denied Robison's initial grievance and grievance appeal in this matter. *See* ECF Nos. 9-1 – 9-8.

Robison seeks compensatory damages in the amount of $50,000 and punitive damages in the amount of $25,000, as well as injunctive and declaratory relief. ECF No. 9, ¶¶ 21-26.

### III. Standard and Scope of Review

A motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) tests the legal sufficiency of the complaint. *See Kost v. Kozakiewicz*, 1 F.3d 176, 183 (3d Cir. 1993). In deciding a motion to dismiss, the court is not opining on whether the plaintiff will be likely to prevail on the merits; rather, the plaintiff must only present factual allegations sufficient "to raise a right to relief above the speculative level." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 556 (2007) (citing 5 C. Wright & A. Miller, Federal Practice and Procedure § 1216, pp. 235-236 (3d ed. 2004)). *See also Ashcroft v. Iqbal*, 556 U.S. 662 (2009)). A complaint should only be dismissed pursuant to Rule 12(b)(6) if it fails to allege "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570 (rejecting the traditional 12(b)(6) standard established in *Conley v. Gibson*, 355 U.S. 41 (1957)). In making this determination, the court must accept as true all well-pled factual allegations in the complaint and views them in a light most favorable to the plaintiff. *See U.S. Express Lines Ltd. v. Higgins*, 281 F.3d 383, 388 (3d Cir. 2002).

While a complaint does not need detailed factual allegations to survive a motion to dismiss, a complaint must provide more than labels and conclusions. *See Twombly*, 550 U.S. at 555. A "formulaic recitation of the elements of a cause of action will not do." *Id.* (citing *Papasan v. Allain*, 478 U.S. 265, 286 (1986)). Moreover, a court need not accept inferences

drawn by a plaintiff if they are unsupported by the facts as set forth in the complaint. *See California Pub. Employee Ret. Sys. v. The Chubb Corp.*, 394 F.3d 126, 143 (3d Cir. 2004) (citing *Morse v. Lower Merion Sch. Dist.*, 132 F.3d 902, 906 (3d Cir. 1997)). Nor must the Court accept legal conclusions disguised as factual allegations. *See Twombly*, 550 U.S. at 555. *See also McTernan v. City of York, Pennsylvania*, 577 F.3d 521, 531 (3d Cir. 2009) ("The tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions.").

Expounding on the *Twombly/Iqbal* line of cases, the Third Circuit has articulated the following three-step approach:

> First, the court must 'tak[e] note of the elements a plaintiff must plead to state a claim.' Second, the court should identify allegations that, 'because they are no more than conclusions, are not entitled to the assumption of truth.' Finally, 'where there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement for relief.'

*Burtch v. Milberg Factors, Inc.*, 662 F.3d 212, 221 (3d Cir. 2011) (quoting *Santiago v. Warminster Twp.*, 629 F.3d 121, 130 (3d Cir. 2010)). This determination is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679.

When ruling upon a motion to dismiss pursuant to Rule 12(b)(6), the Court must "generally consider only the allegations in the complaint, exhibits attached to the complaint, matters of public record, and documents that form the basis of a claim." *Lum v. Bank of Am.*, 361 F.3d 217, 222 n.3 (3d Cir. 2004) (citing *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1426 (3d Cir. 1997). A court may take judicial notice of documents filed in other court

proceedings because they are matters of public record. *See Liberty Int'l Underwriters Can. v. Scottsdale Ins. Co.*, 955 F. Supp. 2d 317, 325 (D.N.J. 2013).

Finally, because Robison is representing himself, the allegations in the Complaint must be held to "less stringent standards than formal pleadings drafted by lawyers." *Haines v. Kerner*, 404 U.S. 519, 520-521 (1972). If the court can reasonably read a *pro se* litigant's pleadings to state a valid claim upon which relief could be granted, it should do so despite the litigant's failure to cite proper legal authority, confusion of legal theories, poor syntax and sentence construction, or unfamiliarity with pleading requirements. *See Boag v. MacDougall*, 454 U.S. 364 (1982); *United States ex rel. Montgomery v. Bierley*, 141 F.2d 552, 555 (3d Cir. 1969) (petition prepared by a prisoner may be inartfully drawn and should be read "with a measure of tolerance"). Thus, the Court may consider facts and make inferences where it is appropriate. But "any pleading must still contain sufficient factual allegations that, when accepted as true, 'state a claim to relief that is plausible on its face.'" *Heffley v. Steele*, 2019 WL 5092127, at *4 (W.D. Pa. Oct. 11, 2019), *aff'd*, 826 Fed. Appx. 227 (3d Cir. 2020) (citations omitted). *See also Baez v. Mooney*, 2021 WL 816013, at *3 (W.D. Pa. Feb. 8, 2021), *report and recommendation adopted*, 2021 WL 808726 (W.D. Pa. Mar. 3, 2021).

**IV.   Discussion and Analysis**

Robison asserts that Defendants violated his First, Sixth, and Fourteenth Amendment rights by confiscating and interfering with his "legal mail" and by interfering with his access to the courts, his attorney-client privileged relationship, and free speech. *See* ECF No. 9, ¶ 19. Robison bases each claim on the loss of certain of his legal papers on two separate dates, May 18, 2020 and July 7, 2020. The May 18 incident involved Beganics as the supervisor who ordered the search of Robison's cell and Vols and Trejchel as the officers who carried out the

search and allegedly removed pages from the preliminary hearing transcript generated as part of the criminal case against Robison. The Complaint does not allege that any Defendant participated in the July 7, 2020 incident or identify who allegedly removed the missing three envelopes, additional pages from his preliminary hearing transcript, letters from his former attorney, case law, and a copy of an Affidavit of Probable Cause during on that date. Given the absence of any allegations that a Defendant personally participated in the July 7 incident, the Court will dismiss Robison's claims based on that incident. Robison's claims based on the alleged May 18, 2020 loss of legal papers are discussed below.

### A. First Amendment Claims

Robinson asserts two First Amendment claims. His "access-to-court" claim alleges that Defendants inhibited his access to court by taking and disposing of legal paperwork crucial to his pending legal issues. His freedom of speech claim is premised on an alleged interference with his mail and communications with his attorney. Each claim is unsupported by the factual allegations of the Complaint and must be dismissed.

### 1. Access-to-Courts Claim

To allege an access-to-court claim, a plaintiff must show that he: (1) suffered an "actual injury" by being shut out of court or losing an arguably meritorious claim; (2) that the defendant proximately caused the alleged violation of plaintiff's rights; and (3) he has "no other 'remedy that may be awarded as recompense' for the lost claim other than in the present denial of access suit." *See Monroe v. Beard*, 536 F.3d 198, 206 (3d Cir. 2008). Robison's access-to-court claim does not survive beyond consideration of the first element. The Complaint is devoid of factual allegations to support an inference that Robison suffered a cognizable injury. In *Lewis v. Casey*, the Supreme Court held that a prisoner asserting this claim must allege facts to show that he or

she has sustained an actual injury to his or her access to the courts. 518 U.S. 343, 349-53 (1996). In other words, the plaintiff must show an "actual injury" in the form of a lost claim or remedy. *See Monroe,* 536 F.3d at 206. "To that end, prisoners must satisfy certain pleading requirements: The complaint must describe the underlying arguable claim well enough to show that it is 'more than mere hope,' and it must describe the 'lost remedy.'" *Id.* (quoting *Christopher v. Harbury*, 536 U.S. 415, 416 (2002)). Robison alleges that pages from his preliminary hearing transcript were missing after the search of his cell, but he alleges no facts to support that he lost an arguable claim or a remedy as a result. Indeed, the Complaint acknowledges that Baganics advised Robison of a procedure to replace the alleged missing transcript pages. Given this fundamental pleading omission, dismissal of Robison's First Amendment access to courts claim is appropriate.

### 2. Freedom of Speech Claim

An incarcerated person does not forfeit his or her rights under the First Amendment. *See Bieregu v. Reno*, 59 F.3d 1445, 1449, 1452 (3d Cir.1995). Although circumscribed, the rights retained by a prisoner include the First Amendment's prohibition against "abridging the freedom of speech," as applicable to the states by incorporation through the Fourteenth Amendment. *Green v. Nish*, 2014 WL 2719720, at *5 (M.D. Pa. June 13, 2014) (quoting U.S. Const. Amend I). "First Amendment rights of association and free speech extend to the right to retain and consult with an attorney." *Cipriani v. Lyncoming Housing Auth.*, 177 F. Supp. 2d 303, 324 (M.D. Pa. 2001). Similarly, inmates retain the right "inherent in the First Amendment …to use of the mails without government interference." *Green*, 2014 WL 2719720, at *5. Prisoners retain these rights, albeit significantly restricted, provided their actions do not threaten the security of the prison or undermine other legitimate penological interests. *See Beard v. Banks*,

548 U.S. 521 (2006) (holding that forbidding inmates' access to newspapers, magazines, and photographs does not violate the First Amendment in the context of a high security prison.).

Unlike Robison's First Amendment access-to-court claim, Robison's First Amendment freedom of speech claim does not require the same proof of "actual injury" to survive. Nevertheless, any First Amendment freedom of speech claim based on Robison's alleged loss or destruction of some of his legal papers fails based on the allegations of the Complaint. This is because isolated instances of the destruction of an inmate's legal papers, such as Robison alleges here, cannot support a freedom of speech claim. *See Fortune v. Hamberger*, 379 Fed. Appx. 116, 120 (3d Cir. 2010) (a single instance where prison officials intercepted or tampered with inmate's legal mail does not support a First Amendment claim). Such action may constitute a First Amendment violation only if it occurs as part of a "pattern or practice." *Jones v. Brown*, 461 F.3d 353, 359 (3d Cir. 2006). "[A] single instance is usually not enough." *Gibson v. Erickson*, 830 Fed. Appx. 372, 373 (3d Cir. 2020); *Bieregu v. Reno*, 59 F.3d 1445, 1452 (3d Cir. 1995), *abrogated on other grounds by Lewis v. Casey*, 518 U.S. 343 (1996) ("We decline to hold that a single instance of damaged mail rises to the level of constitutionally impermissible censorship."); *Nixon v. Sec'y Pennsylvania Dep't of Corr.*, 501 Fed. Appx. 176, 178 (3d Cir. 2012) ("the District Court correctly determined that Nixon's claim alleging a single, isolated interference with his personal mail was insufficient to constitute a First Amendment violation."); *Fortune v. Hamberger*, 379 Fed. Appx. 116, 120 (3d Cir. 2010) (a single instance where prison officials intercepted or tampered with inmate's legal mail does not support a First Amendment claim); *Jones v. Brown*, 461 F.3d 353, 359 (3d Cir. 2006) (such action may constitute a First Amendment violation only if it occurs as part of a "pattern or practice."); *see also Davis v. Goord*, 320 F.3d 346, 351 (2d Cir. 2003) ("[A]n isolated incident of mail tampering is usually

insufficient to establish a constitutional violation."); *Davis v. Goord,* 320 F.3d 346, 351 (2d Cir.2003); *Washington v. James,* 782 F.2d 1134, 1139 (2d Cir.1986) (a single isolated incident of interference with an inmate's mail is insufficient to state a claim under § 1983). The Complaint alleges no facts to support that Robison's legal papers were destroyed or discarded as part of a pattern, practice, or policy at the prison. Instead, he alleges only a single instance where papers previously transmitted in the mail went missing following a cell search. Such allegations do not support a First Amendment claim.

Robison also alleges that on July 7, 2020, an unnamed corrections officer lost or discarded legal papers that included envelopes containing letters from his lawyer. As noted, the absence of allegations that any named defendant participated in the July 7 incident is fatal to his First Amendment claim to the extent it is based on this incident. But, even more fundamental, these allegations simply do not involve an "interference with mail" under the First Amendment. The fact that the lost papers included correspondence or other documents that happened to have been transmitted through the mail on some prior date does not make their subsequent loss or removal an interception of or interference with the inmate's mail. First Amendment interference with mail claims arise when prison personnel improperly seize, open, screen, or tamper with an inmates incoming or outgoing mail. *See Robinson v. Pennsylvania Dep't of Corr.*, 851 Fed. Appx. 289, 291 (3d Cir. 2021); *Jones,* 461 F.3d at 358-59 (a "pattern and practice of opening properly marked incoming [legal] mail outside an inmate's presence infringes communication protected by the right to free speech."). Nothing in the Complaint supports an inference that any prison official interfered with Robison's receipt or transmission of mail or that any official targeted Robison's mail for confiscation. His First Amendment freedom of speech and interference with mail claims fail as a matter of law.

### B.  Sixth Amendment Claim

Robison also asserts that the Defendants violated his Sixth Amendment right to the effective assistance of counsel. He similarly claims that the Defendants' tampering with and confiscating his legal paperwork violated his attorney-client privilege. Jail procedures that cause "unreasonable" interference with an accused person's ability to consult counsel violate the Sixth Amendment right. *See Benjamin v. Fraser*, 264 F.3d 175, 185-86 (2d. Cir. 2001). The facts alleged in this case, however, do not support any interference with Robison's ability to consult with his counsel. A single incident where a small number of pages from a hearing transcript went missing in no way interferes with Robison's ability to consult with his attorney. By their very nature, the missing pages of the transcript can be easily replaced. Even ignoring Robison's failure to associate the July 7 incident with any defendant, the papers lost on that date similarly do not materially or unreasonably impair Robison's Sixth Amendment right to consult with counsel. Even considering all documents Robison alleges were lost during the July 7 incident, it cannot be said that Robison's right to confer with his attorney was unreasonably impaired. Robison has alleged no facts to support an inference that any prison official interfered with his attorney-client relationship or ability to communicate with his attorney in any criminal proceeding. *See Wolff v. McDonnell*, 418 U.S. 539, 576 (1974) (Sixth Amendment right protects the attorney-client relationship in criminal matters, not civil matters citations). Robison's Sixth Amendment claim fails as a matter of law.

### C.  Fourteenth Amendment Due Process

Robison has no viable Fourteenth Amendment claim for deprivation of property without due process because he had meaningful post-deprivation remedies available to him to address the loss of his papers. *See Hudson v. Palmer*, 468 U.S. 517, 533 (1984) ("[A]n unauthorized

intentional deprivation of property by a state employee does not constitute a violation of the procedural requirements of the Due Process Clause of the Fourteenth Amendment if a meaningful post-deprivation remedy for the loss is available."). Specifically, Robison had the right to file a grievance through the prison administrative process or to file a conversion or replevin action in state court. Indeed, the record confirms that Robison filed two grievances on this matter before commencing this action in federal court. Accordingly, to the extent Robison asserts a Fourteenth Amendment procedural due process claim, this claim fails as a matter of law.

### D. Supervisory Liability Claims

Having disposed of Robison's claims based on the absence of factual allegations to support their respective elements, the Court need not reach the other issues raised by the Defendants in their brief. However, because Robison will be provided an opportunity to amend his Complaint, the Court will address his supervisory theories of liability against Beganics, Holman, and Sutter.

To sustain a claim under 42 U.S.C. § 1983, Robison must aver facts to support the personal involvement of each Defendant in the alleged wrong. *See Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir. 1988). His complaint must identify the wrongful act or acts of each Defendant. *See Evancho v. Fisher*, 423 F.3d 347, 353 (3d Cir. 2005). "[L]iability cannot be predicated solely on the operation of *respondeat superior*." *Rode,* 845 F.2d at 1207; *Taylor v. Oney*, 196 Fed. Appx. 126, 128 (3d Cir. 2006). Robison does not allege that Beganics, Holman, or Sutter participated in the alleged loss or destruction of any of his legal papers. Instead, his claims against these defendants are premised upon their supervisory roles at the ECP. However, a defendant's status as warden, supervisor, or other prison official at the time of an alleged

constitutional deprivation, standing alone, does not support individual liability. *See Rode*, 845 F.2d at 1207. Furthermore, an official's after-the-fact review of a grievance or grievance appeal is not enough to establish personal involvement. *See, e.g., Brooks v. Beard*, 167 Fed. Appx. 923, 925 (3d Cir.2006) (allegations that prison officials and administrators responded inappropriately to inmate's later-filed grievances do not establish the involvement of those officials and administrators in the underlying deprivation). *See also Cole v. Sobina*, 2007 WL 4460617 (W.D. Pa. Dec. 19, 2007).

Instead, a plaintiff states a § 1983 claim against such officials only if he alleges facts to support liability under at least one of two recognized theories of supervisory liability. Under these theories, a supervisor may be liable if he (1) established and maintained a policy, practice or custom that directly caused the constitutional harm, or if he participated in violating plaintiff's rights, directed others to violate them, or (2) as the person in charge, had knowledge of and acquiesced in his subordinate's violations. *See Santiago v. Warminster Twp.*, 629 F.3d 121, 129 n.5 (3d Cir. 2010). Allegations that merely hypothesize that an individual defendant may have had knowledge of, or personal involvement in, the deprivation of the plaintiff's rights, do not support individual liability. *See Atkinson v. Taylor,* 316 F.3d 257, 270 (3d Cir. 2003); *Rode*, 845 F.2d at 1207-08.

Robison's Complaint alleges only that Beganics "was the supervising officer of the searches as well as the one I explained my issue to…." ECF No. 9, ¶ C. Holman is identified as the "supervisor who denied [and] responded to [Robison'] grievance as well as some of my[his] messages on the kiosk." *Id.* Finally, Sutter is alleged to be the official who "responded to [his] appeal [and] denied it as well as being the one responsible for everyone in the above mentioned

statements." *Id*. These allegations do not support the individual or supervisory liability of any of these Defendants. The claim against Beganics, Holman, and Sutter will be dismissed.

### E. Qualified Immunity

The Defendants have also raised the affirmative defense of qualified immunity in support of their motion to dismiss. State officials are entitled to qualified immunity from damage liability claims if their conduct did "not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Jones v. Brown*, 461 F.3d 353, 364 (3d Cir. 2006) (citing *Harlow v. Fitzgerald,* 457 U.S. 800, 818, (1982)). A two-part analysis is used to resolve whether government officials are entitled to the protections of qualified immunity: The court must decide (1) whether the facts alleged or shown by the plaintiff make out a violation of a federal constitutional or statutory right, and (2) if so, whether that right was "clearly established" at the time of the defendant's alleged misconduct. Qualified immunity applies unless the official's conduct violated such a right. *See Pearson v. Callahan*, 555 U.S. 223, 232 (2009). "The contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Jones*, 461 F.3d at 364 (quoting *Anderson v. Creighton,* 483 U.S. 635, 640 (1987)).

Having determined that Robison's Complaint fails to state a claim under federal law against any of the defendants, it necessarily follows that each is entitled to qualified immunity based on the first prong of the analysis, and there is no need to address the second—"clearly established right"—prong.

## V.     Amendment

Having determined that the Complaint fails to state a claim against the Defendants, the Court must now determine whether further amendment of that pleading would be futile. *See Hockenberry v. SCI Cambridge Springs/Pennsylvania Dep't of Corr.*, 2019 WL 2270345, at *3 (W.D. Pa. May 28, 2019) (stating "[t]he U.S. Court of Appeals for Third Circuit has instructed that if a civil rights complaint is vulnerable to dismissal for failure to state a claim, the Court should permit a curative amendment, unless an amendment would be inequitable or futile"). Although the Court has serious doubts that Robison will be able to allege additional facts to support any of his claims, it will allow him twenty (20) days to file an amended complaint to cure the factual deficiencies of his First Amendment claims and demonstrate the personal involvement of each Defendant. Robison's Sixth Amendment and Fourteenth Amendment claims, however, will be dismissed with prejudice because any attempt to amend to cure the deficiencies of these claims would be futile.

## VI.    Conclusion

For the foregoing reasons, the Defendants' Motion to Dismiss (ECF. No 21) will be GRANTED as follows:

- Robison's First Amendment claims will be dismissed without prejudice, and Robinson will be granted leave file an amended complaint as to these claims within twenty (20) days of the Court's Order.

- Robison's Sixth Amendment and Fourteenth Amendment claims will be dismissed with prejudice and without leave to amend.

A separate Order follows this Memorandum.

DATED: December 29, 2021.

                BY THE COURT:

                _____
                HON. RICHARD A. LANZILLO
                UNITED STATES MAGISTRATE JUDGE